**No. 25-9575**
**ORAL ARGUMENT REQUESTED**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

**MARTA IWASECZKO** and **THOMAS SPATAFORE**,

*Petitioners*,

v.

**DEPARTMENT OF LABOR**

*Respondent.*

**TETON COUNTY WEED AND PEST CONTROL DISTRICT**

*Intervenor.*

On Petition for Review from the Administrative Review Board
Docket No. ARB-2022-0059

---

# CORRECTED PETITIONERS' REPLY BRIEF

---

Richard R. Renner
The Noble Law
700 Spring Forest Road, Suite 205
Raleigh, NC 27609
(919) 251-6008
rrenner@igc.org
rrenner@thenoblelaw.com

Attorney for Petitioners Marta Iwaseczko
and Thomas Spatafore

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES....................iii

GLOSSARY OF ACRONYMS....................vi

INTRODUCTION....................1

A. DOL's errors on protected activity are not harmless....................1

B. Standard of review....................3

FACTUAL BACKGROUND....................5

A. Spatafore contended that he was a part-time employee....................5

B. Edmiston's attitude about Spatafore's performance changes....................5

C. Spatafore's November 9, 2017, email and TCWP's investigation of Iwaseczko's emails....................7

D. Edmiston and Cernicek meet with Iwaseczko on December 4, 2017....................8

LEGAL ARGUMENT....................9

I. THE BOARD COMMITTED LEGAL ERROR IN REFUSING TO FIND PROTECTED ACTIVITIES....................9

A. The ARB committed legal error in holding that protected activities must set out the basis for a whistleblower's reasonable belief....................9

B. The ARB committed legal error in refusing Petitioners' claims of perceived protected activity....................13

C. Petitioners are protected under 29 U.S.C. § 218c(a)(3) and (4) for participation in proceedings....................17

D. Iwaseczko is protected under 29 U.S.C. § 218c(a)(4) for participation in Spatafore's protected activities....................21

II. REMAND IS APPROPRIATE FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS COURT'S JUDGMENT................................24

CONCLUSION..........................................................................................26

STATEMENT REGARDING ORAL ARGUMENT.............................................26

CERTIFICATE OF COMPLIANCE.....................................................................28

CERTIFICATE REGARDING REDACTIONS.....................................................28

ADDENDUM..............................................................................................29

A. Affordable Care Act (ACA), Section 1558, 29 U.S.C. § 218c....................29

B. Affordable Care Act (ACA), Section 1557(a), 42 U.S.C. § 18116(a)..........30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Smith & Wesson, Inc.*, 40 F.4th 43 (1st Cir. 2022)....................................4

*Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360 (4th Cir. 2000)..............................16

*Brown & Root, Inc. v. Donovan*, 747 F.2d 1029 (5th Cir. 1984)....................17-18

*Chambers v. Dept. of Interior*, 515 F.3d 1362 (Fed. Cir. 2008)...........................25

*Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tennessee*, 555 U.S. 271 (2009)...................................................................................................24

*DeMasters v. Carilion Clinic*, 796 F.3d 409 (4th Cir. 2015)..........................10-11

*Dep't of Homeland Security v. MacLean*, 574 U.S. 383 (2015); ........................24

*Edwards v. A.H. Cornell & Son*, 610 F.3d 217 (3d Cir. 2010)............................20

*Genberg v. Porter*, 882 F.3d 1249 (10th Cir. 2018)............................................25

*Guttman v. Passaic Valley Sewerage Comm.*, 85-WPC-2, D&O of SOL (March 13, 1992)...............................................................................................18

*Heffernan v. City of Paterson*, 578 U.S. 266 (2016)...........................................16

*Iweha v. State of Kan.*, 121 F.4th 1208 (10th Cir. 2024)....................................10

*Kansas Gas & Electric Co. v. Brock*, 780 F.2d 1505 (10th Cir. 1985)................17

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U. S. 1 (2011).....12, 20

*Knox v. U.S. Dep't of Interior*, ARB No. 2006-0089, ALJ No. 2001-CAA-3 (ARB Apr. 28, 2006)...................................................................................9

*Knox v. U.S. Dept. of Labor*, 434 F.3d 721 (4th Cir. 2006).............................9, 25

*Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253 (4th Cir. 1998)...............................................................................................23

*Long v. Byrne*, 146 F.4th 282 (2d Cir. 2025).........................................................4

*Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789 (7th Cir. 2020)............................17

*Minor v. Bostwick Labs., Inc.*, 669 F.3d 428 (4th Cir. 2012).............................16

*Mount v. U.S. Dep't of Homeland Sec.*, 937 F.3d 37 (1st Cir. 2019)..................15

*Munsey v. Federal Mine Safety and Health Review Comm'n*, 595 F.2d 735 (D.C. Cir. 1978)....18

*Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024)....25

*National Labor Relations Board v. Scrivener*, 405 U.S. 117 (1972)....13, 22

*Passaic Valley Sewerage Comm. v. Department of Labor*, 992 F.2d 474 (3d Cir. 1993)....18-19

*Phillips v. Interior Board of Mine Operations Appeals*, 500 F.2d 772 (1974)....18

*Reznik v. inContact, Inc.*, 18 F.4th 1257 (10th Cir. 2021)....3

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)....4

*Sexton v. Panel Processing, Inc.*, 754 F.3d 332 (6th Cir. 2014)....20

*Stone & Webster Engineering Corp. v. Herman*, 115 F.3d 1568 (11th Cir. 1997)....18

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989 (9th Cir. 2009)....11

*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463 (6th Cir. 2012)....13

*White v. N.H. Dep't of Corr.*, 221 F.3d 254 (1st Cir. 2000)....16

*Wiest v. Lynch*, 710 F.3d 121 (3rd Cir. 2013)....9

*Yesudian ex rel. United States v. Howard Univ.*, 153 F.3d 731 (D.C. Cir. 1998).12

**Statutes**

5 U.S.C. § 706....4

29 U.S.C. § 1140....20

29 U.S.C. § 215(a)(3)....16

29 U.S.C. § 218c(a)(2)....20, 29

29 U.S.C. § 218c(a)(3)....17, 20, 29

29 U.S.C. § 218c(a)(3) and (4)....13, 17, 22, 29

29 U.S.C. § 218c(a)(4)....21-22, 29

49 U.S.C. § 31105(a)(1)(A)(i)....19

**Other Authorities**

H. Rep. 102-474 (Part VIII, May 5, 1992)....................................................19
S. Rep. 107-146 (May 6, 2002)...............................................................18
S. Rep. 112-155 (April 19, 2012)............................................................18

There are no prior court appeals in this matter, and Petitioners' counsel is not aware of any related appeals.

# GLOSSARY OF ACRONYMS

| | |
|---|---|
| ACA | Affordable Care Act, employee protection provision, 29 U.S.C. § 218c |
| ALJ | Administrative Law Judge (of the U.S. Department of Labor) |
| APA | Administrative Procedure Act, 5 U.S.C. Chapter 5 |
| CPSIA | Consumer Product Safety Improvement Act, 15 U.S.C. § 2087 |
| CSRA | Civil Service Reform Act of 1978, Public Law 95-454, as amended |
| CWA | Clean Water Act, employee protection, 33 U.S.C. § 1367(a) |
| D&O | Decision and Order of the Administrative Law Judge, in the record[1] |
| EEO | Equal Employment Opportunity |
| FLSA | Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) (anti-retaliation) |
| ERISA | Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1140 |
| FO | Final Order (of the ARB), attached and also at DE 21-8, pp. 195-240 |
| HT | Hearing Transcript, DE 21-1, pp. 8-427 |
| MSNBC | Microsoft National Broadcasting Co. |
| NLRA | National Labor Relations Act, 29 U.S.C. § 158(a)(1) |
| OSHA | Occupational Safety and Health Administration |
| PFR | Petition for Review |
| TCWP | Teton County Weed & Pest Control District (Intervenor here) |
| SOX | Sarbanes-Oxley Act, employee protection, 18 U.S.C. § 1514A |
| STAA | Surface Transportation Assistance Act, 49 U.S.C. § 31105 |
| Title VII | Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 |
| WPEA | Whistleblower Protection Enhancement Act of 2012, Public Law 112-199 |
| WPA | Whistleblower Protection Act, 5 U.S.C. §§ 1221, 2302 |

[1] DE 21-7, pp. 286-414, reflecting the docket entry number and green-header page number (the official Tenth Circuit pagination as filed on December 12, 2025), followed by line numbers where applicable.

# INTRODUCTION

## A. DOL's errors on protected activity are not harmless.

The Department of Labor's brief (DOL Br.) asserts, as its initial and final arguments, that redetermination of the protected activity is "immaterial" because the ALJ "determined that none of the alleged protected activities were contributing factors in Spatafore's and Iwaseczko's adverse actions." Quoting DOL Br. 25 and 15; see also 56-57. That is incorrect. Nowhere did the ALJ or ARB say that the following testimony of TCWP Board members Kasey Mateosky and Mary Cernicek, and their brief to the ALJ, did not contribute to their actions against Iwaseczko and Spatafore:

- "I was thinking a multitude of things, I probably used that [slip-and-fall] as an example." DE 21-1, 50:4-8.
- "[T]his district was going to have a lawsuit over something." DE 21-1 at 50:25-51:4. DE 21-7 at 57 (last sentence). Mateosky.
- "Thomas was seeking litigation and to harm the District." DE 20-3 at 32:14-15. Cernicek.
- "There was no reason to have a non-employee in the housing that was seeking to litigate against the District." DE 20-3 at 32:23-25; DE 21-7 at 63, first ¶. Cernicek.

- "Thomas was making these complaints to other agencies[.]" DE 21-1 at 57:4-6. Mateosky.
- That its policy is "not to turn a complaint into world war three." DE 21-1 at 321:24-25. [Statement by Intervenor's counsel]
- Iwaseczko releasing information "to bolster a lawsuit" would be "a very egregious act." DE 21-1 at 62:23-63:8; DE 21-7 at 349, fn 57. Mateosky.
- The Board's consideration that Spatafore's lawsuit would be forthcoming based on his search for legal counsel, DE 21-1 at 63:9-13, 64:1 (about "impending liability or impending litigation."); DE 21-7 at 74, 99-100.

These statements were made by TCWP officials to justify their actions as issue in this case. *See e.g*. DE 20-3 at 312:20-313:11. This is direct evidence of causation. If this Court agrees that these statements invoke legal protection, then the DOL should easily find causation on remand.

DOL later cites to the ARB's conclusion "that the lack of contributing-factor causation was determinative." DOL Br. 28, citing to DE 43 at 95-96 (DOL's parenthetical reference to "ALJ 28-29" should be "ARB 28-29"). What the ARB actually said at Final Order (FO) 29 is "Spatafore failed to show that **these three protected activities** were a contributing factor in the alleged adverse actions at issue." (Emphasis added.) This is not a determination about causation for "all of Petitioners' alleged protected activity" as alleged at DOL Br. 25.

Similarly, DOL cites to DE 21-7 at 396 and FO 39, n. 274 to claim that all alleged protected activities were considered. DOL Br. 56. However, the ALJ and ARB statements at these locations are conclusory. DOL cannot explain why, for example, Mateosky's statement that "Thomas was seeking litigation and to harm the District" is not a contributing factor in his eviction or non-selection, or why his statement that Iwaseczko releasing information "to bolster a lawsuit" would be "a very egregious act" was not evidence of animus and causation.

### B. Standard of review.

DOL also argues that Petitioners did not present their arguments about the standard of review to the ALJ or ARB. DOL Br. at 25, n. 3. However, this Court's standard of review was not an issue at the DOL. Petitioners had no reason to address judicial review standards during the administrative process. Before this Court, Fed. R. App. P. Rule 28(a)(8)(B) required Petitioners to address it. The ARB has no such rule.

TCWP's Brief relies on *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1265 (10th Cir. 2021), to argue that this Court's determination of objective reasonableness is "a fact-bound inquiry." TCWP Br. at 16. This Court in *Reznik* actually determined that case *de novo* since it was reviewing a Rule 12(b)(6) dismissal. 18 F.4th at 1260. It also explained at 18 F.4th at 1262 that:

> Determining whether Ms. Reznik's belief that she was opposing

> conduct unlawful under Title VII was objectively reasonable thus involves analyzing the law, the relevant attendant circumstances of Ms. Reznik's job, and the severity, pervasiveness, and duration of the alleged discrimination.

This describes a mixed question of law and fact that includes analyzing the law which is done *de novo*.

TCWP also contends that while the scope of constitutional protection is determined as a matter of law, statutory protections should be different. TCWP Br. at 16-17. This argument is inconsistent with the APA which provides that the "court shall decide all relevant questions of law[.]" 5 U.S.C. § 706; Petitioners' Br. 31-32. TCWP's brief argues that statutory coverage arises from the text and not from a "constitutional motive analysis." TCWP Br. at 23. There, it cites *Baker v. Smith & Wesson, Inc.*, 40 F.4th 43, 47-50 (1st Cir. 2022), but *Baker* addressed only "questions of statutory interpretation" and never even mentions the Constitution. 40 F.4th at 50. Conversely, *Long v. Byrne*, 146 F.4th 282, 294 (2d Cir. 2025), addressed a First Amendment retaliation claim, but still noted that public employees can "avail themselves of the powerful network of legislative enactments —such as whistle-blower protection laws and labor codes—available to those who seek to expose wrongdoing." Quoting, *Ruotolo v. City of New York*, 514 F.3d 184, 189 n.1 (2d Cir. 2008) (internal quotation marks omitted). None of these cases hold that questions of statutory interpretation are decided by any standard other than *de novo*.

## FACTUAL BACKGROUND

### A. Spatafore contended that he was a part-time employee.

Petitioners agree that TCWP's normal policy is not to provide health benefits to seasonal employees and that "TCWP had made a couple of execptions in providing health insurance for part-time workers[.]" Quoting TWCP Br. at 3.

Spatafore's concern about TCWP's disparate treatment is that by working for TCWP during the winter season, he worked more than six months a year and should have been classified as part-time and eligible for health benefits. DE 21-7 at 297-98, ¶ (D)(3) and fn 17, 302, 1st ¶.

### B. Edmiston's attitude about Spatafore's performance changes.

"From 2008 through the mid-season of 2017, Spatafore had always received overall good performance evaluations, with scores ranging from average to-most often-excellent and exemplary." DE 21-7 at 297, ¶ (D)(1). Spatafore received his mid-season evaluation on July 17, 2017. DE 21-7, 306, ¶ 11 He received an exemplary or excellent rating for all criteria except one, for which he received an "adequate" rating for sample collection and processing. The notes were generally positive, and ·encouraged Spatafore to help teach less experienced workers, and to provide management "with information on how things are going in the field." *Id.*

TCWP's brief, p. 7, ¶ 3, cites to testimony by Supervisor Erika Edmiston about Spatafore's performance. It presents this testimony before discussing the email exchange that preceded Edmiston's change of attitude about Spatafore.

On September 5, 2017, Edmiston received Spatafore's outline. DE 21-5 at 195, JX 124 (showing her initials); DE 21-1 at 101:12-15. This was her first notice that Spatafore had any concerns about TCWP's employment practices. DE 21-1 at 103:13-21. Edmiston felt that Spatafore was being accusatory and that was unacceptable. DE 21-1 at 109:2-12. She felt his concern was "very out of left field." DE 21-1 at 109:18.

On September 7, 2017, Edmiston wrote to Bill Miller, a loss control manager from the Local Government Liability Pool (LGLP), for advice. DE 21-7 at 306, ¶ 18. Edmiston explained to Miller that she was taken aback by the audacity of a seasonal employee demanding that TCWP answer to him, that she believed the matter was getting out of hand, and that she was inclined "to just end this and no longer respond." *Id*. She asked Miller if she could "just cut him loose" and asked for advice on how to phrase the reason within TCWP's conduct policy. *Id*. at 307; DE 21-4 at 8 (parenthetical in largest ¶). Intervenor has no contemporaneous documentation before this date of anyone's belief that Spatafore's performance was unacceptable.

### C. Spatafore's November 9, 2017, email and TCWP's investigation of Iwaseczko's emails.

TCWP's Brief notes that "prior to November 9, 2017, Spatafore had not specifically requested *health benefits* in writing to TCWP, or alleged disparate treatment about such benefits." TCWP Br. at 10, top ¶, citing DE 21-7 at 324; see also TCWP Br. at 27. Of course, that changed with Spatafore's November 9, 2017, 1:51 pm, email. DE 21-2 at 103; Petitioners' Br., 15.

Also in November 2017, Edmiston learned that Iwaseczko had sent two emails to herself. DE 21-1 at 112:10-14. She recalls asking the District's IT contractor, Jesse Burcham, to access Iwaseczko's email sometime in November. DE 21-1 at 119:5-9. Neither she nor Burcham (DE 21-1 at 183:22-84:2) can recall the date of her initial request. Burcham does recall that Edmiston requested an "archival hold" for only Iwaseczko's Office 365 account. DE 21-1 at 184:13-23.

On November 9, 2017, at 3:15 pm, Burcham responded to Edmiston with an email, "Here's the report, I'll call you." DE 21-3 at 135 (CX 35). This is 84 minutes after Spatafore sent his November 9, 2017, 1:51 pm, email to Edmiston. Burcham testifies that he could have prepared his report in 30-45 minutes. DE 21-1 at 188:12-17. TCWP's Brief does not claim that Edmiston began her investigation of Iwaseczko's emails before she received Spatafore's November 9, 2017 email.

TCWP's Brief at p. 10 states in heading 8 "Edmiston discovers Iwaseczko's breach of TCWP's Policy." However, the body of section 8 never explains how

Iwaseczko's emails to herself violated TCWP's policy. On page 6, the brief says it is against policy to "disclose it to any person or entity outside the District," but Iwaseczko was a current TCWP employee, so sending the emails to herself was not a violation of this policy. Also, Spatafore literally lived on District property.

### D. Edmiston and Cernicek meet with Iwaseczko on December 4, 2017.

TCWP's Brief faults Iwaseczko for "never specif[ying] that she was referring to Spatafore, mention[ing] his name directly, or mention[ing] treatment of him as a Native American." TCWP Br. at 13, last sentence. Iwaseczko expected that after raising her concern about "disparate treatment," they would ask follow-up questions to clarify what she meant, DE 21-1 at 410:21-411:2, but Edmiston said and did nothing about Iwaseczko's reported concern that there was disparate treatment within TCWP. DE 21-1 at 158:11-13. Instead, Cernicek made the decision to end the meeting. DE 21-1 at 155:2-7. Iwaseczko did not provide the specifics TCWP complains about because TCWP's Board Member Cernicek did not want the specifics and chose to end the meeting.

## LEGAL ARGUMENT

### I. THE BOARD COMMITTED LEGAL ERROR IN REFUSING TO FIND PROTECTED ACTIVITIES.

#### A. The ARB committed legal error in holding that protected activities must set out the basis for a whistleblower's reasonable belief.

Undersigned truly regrets misunderstanding whether the ARB's decision in *Knox v. U.S. Dep't of Interior*, ARB No. 2006-0089, ALJ No. 2001-CAA-3 (ARB Apr. 28, 2006), was the decision reversed in *Knox v. U.S. Dept. of Labor*, 434 F.3d 721, 725 (4th Cir. 2006). This misunderstanding should not distract this Court from the legal issue of whether it should follow the Fourth Circuit holding as set out in Petitioners Brief, pp. 36-37 ("it does not follow that he must have necessarily conveyed a notion to have reasonably believed it"), or the ARB's holding that "such communication is essential to place respondent on notice and make the employer aware—either explicitly or implicitly—that the employee is raising a concern about conduct prohibited by the ACA." FO at 26. Regardless of whether the ARB decision in *Knox* came before or after the Fourth Circuit's decision, the Fourth Circuit is the superior tribunal, and its holding about the scope of protection better fits the language and remedial purpose of whistleblower laws.

The DOL seeks to recast the Third Circuit decision in *Wiest v. Lynch*, 710 F.3d 121, 133 (3rd Cir. 2013), by saying that "*Wiest* holds that 'no magic words' (*i.e.*, the elements of fraud) are required." DOL Br. at 38. At this page, the DOL

Brief does not provide a citation for the words in quotes, "no magic words." These words do not appear in the Third Circuit's decision in *Wiest*. Instead, it appears that the DOL brief is quoting from *Iweha v. State of Kan.*, 121 F.4th 1208, 1233 (10th Cir. 2024). While Petitioners can agree that no magic words are required, that phrase is a more limited expression of what the Third and Fourth Circuits have held about the scope of protection created by whistleblower laws.

The DOL Brief next urges this Court to adopt the Fourth Circuit's holding in *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015), that requires both a reasonable belief and employee conduct that, "communicates to her employer a belief that the employer engaged in … a form of employment discrimination[.]" DOL Br. at 38. Petitioners note that Spatafore meets this requirement in his November 9, 2017, email in which he directly says that he is "overtly discriminated against" because of his "Native American practice[.]" DE 21-2 at 103, second ¶; Petitioners' Br., 15. DOL acknowledges that this email "mentioned discriminatory practices in promotions[,]" but argues that it "did not connect his lack of health benefits to discrimination." DOL Br. 10. This argument seeks a standard that is higher than what *DeMasters* requires. It asks that employees explicitly connect the dots for the employer and set out the elements of the claim. Petitioners argue that including both the claims of employment discrimination and

the lack of health insurance in the same email is enough to make the employer aware, at least "implicitly." Quoting FO 26.

The DOL Brief disaggregated its consideration of *DeMasters* by separating its requirement for some communication to the employer (at p. 38) from its requirement to evaluate a "continuous course of [oppositional] conduct … as a whole." DOL Br. at 55. Applying this doctrine here connects Spatafore's earlier complaints about discrimination in hiring with (1) his queries about health insurance, his November 9 email raising both and (2) his subsequent complaint to the County Commissioners about violations of ACA Section 1557. When considered as a whole, they paint a picture of escalation and discernment. The DOL Brief goes against this holding by explicitly seeking separate consideration of each of Spatafore's actions. DOL Br. at 55.

The purpose of the ACA's whistleblower protection is impaired by the ARB's disaggregation of the course of oppositional conduct and its requirement that each activity must directly connect disparate treatment in health benefits with the prohibited form of discrimination. Whistleblower protections were "intended to include all good faith and reasonable reporting ... and there should be no presumption that reporting is otherwise." *Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 1002 (9th Cir. 2009) (SOX case).

An important issue in deciding whether activity is protected is whether it was sufficient for "a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U. S. 1, 14 (2011). Here, Spatafore's email was enough to provoke TCWP's Board to order his eviction the next day – when Edmiston had read the email and the Board members knew about it, but had not read its contents. The Board minutes for this meeting (DE 21-2 at 87) show that the Board considered the following:

> He [Spatafore] is reaching out to the State (WY Retirement System) and Teton County to complain about the District. There is also evidence that he is discussing district business elsewhere. which is concerning. ...
>
> The District continues to receive additional correspondence from Thomas. ...
>
> Erika advised the Board that Thomas Spatafore had sent an additional communication to Erika on November 9 with further complaints about events from 2016. The Board members had not received this email.

Those Board members had no need for Spatafore's help in connecting the dots. The fact of his email was enough and they did not have to read it. Wherever his pattern of repeated concerns was going, they were against it. As in *Yesudian ex rel. United States v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998), they acted against Spatafore "before [he] ha[d] put all the pieces of the puzzle together[.]" Petitioners need protection for their "participation in the important developmental

stages[.]" Quoting *National Labor Relations Board v. Scrivener*, 405 U.S. 117, 123 (1972). TCWP's Board members saw a big picture of where Spatafore's concerns could go. There is no need for protected activity to "link" a concern about lack of health insurance to discrimination when the employer has already linked the risk of litigation to its decision to eject that employee. Quoting TCWP Br. at 21. See, *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 470 (6th Cir. 2012) (holding that complaints of sexual harassment were protected opposition even though there was insufficient evidence to prove the alleged harassment was based on sex, because "[a] plaintiff does not need to have an egg-shell skull in order to demonstrate a good faith belief that he was victimized").

If this ARB decision stands, employers will have an incentive to retaliate early – before the employee can put all the pieces of the puzzle together. That is the opposite of the remedial purpose of every whistleblower protection law.

### B. The ARB committed legal error in refusing Petitioners' claims of perceived protected activity.

The ACA explicitly protects those who are "about to" testify, assist or participate in proceedings. 29 U.S.C. § 218c(a)(3) and (4). The DOL agrees that this can also include those who consult an attorney, but only if "the employer had [] reason to connect the employee's legal consultation to the statutory violations

that were ultimately alleged." DOL Br. 45, citing DE 21-7 at 380. Petitioners make three points about this argument. First, the purpose of an employee's consultation with an attorney is to get learned advice about what laws can apply to advance the client's interests. It would be impractical to require the client to know the law before seeing the attorney, and such a requirement would defeat the purpose of encouraging employees to help enforce the law.

Second, the employer in this case did have reason to connect Spatafore's consultation with an attorney with the prospect of proceedings under any and all laws. Spatafore's consultation with the lawyer prompted Board Member Mateosky to say, "this district was going to have a lawsuit over something." DE 21-1 at 50:25-51:4. DE 21-7 at 57 (last sentence). This retaliatory intent is broad enough to include animus against proceedings concerning the ACA. That is "something." Mateosky did not need to know about the ACA's whistleblower protection to know that discrimination was illegal or that retaliating against a potential claimant would also be illegal. Even if he was ignorant of the law, that is not a valid defense for retaliating. Further, there is no reason to give public officials an incentive to be ignorant of their obligations to refrain from retaliation.

Third, DOL errs in focusing on Spatafore's and Iwaseczko's activities *before* they were evicted and fired. "About to" means the law looks at what Spatafore and Iwaseczko could do in the *future*. There is no dispute that they both

participated in ACA proceedings by bringing this very action. This action is among the forms of "litigation" that Mateosky and Cernicek were concerned about when they evicted Spatafore and fired Iwaseczko. TCWP asserts that the Board's "concern was undifferentiated[.]" TCWP Br. at 25. DOL argues that "the Board was not concerned that Spatafore would engage in litigation 'in furtherance of the ACA's purposes." DOL Br. at 51, quoting FO 30. DOL's brief provides no citation to the record to support this claim. Petitioners have cited numerous statements by the employer's officers expressing animus toward any and all forms of litigation. *See, e.g.*, DE 21-1 at 63:9-13, 64:1 (Mateosky's testimony that he feared "impending liability or impending litigation" from Spatafore's consulting an attorney). That necessarily includes animus against litigation under the ACA – the very litigation Iwaseczko and Spatafore actually commenced in 2018 that led to this proceeding. There is no evidence that the officers had animus against all forms of litigation *except* those under the ACA. All means all, including the ACA.

Similarly, TCWP argues that, "the employee must prove the employer perceived activity protected by the specific statute invoked," citing *Mount v. U.S. Dep't of Homeland Sec.*, 937 F.3d 37, 43-44 (1st Cir. 2019). At these pages, *Mount* says nothing about "the specific statute invoked." Later, *Mount* states this about properly exhausting a claim:

> In this context, we have stated that "the exact wording of the charge of discrimination need not presage with literary exacti-

> tude the judicial pleadings which may follow." [S]ee also *White v. N.H. Dep't of Corr.*, 221 F.3d 254, 263 (1st Cir. 2000) ("Though the administrative complaint does not spell out all of the specific [incidents], it was sufficient to describe the essential nature of the charge and to lead to a reasonable investigation thereof."). [Some quotations and citations omitted.]

DOL seeks to distinguish *Heffernan v. City of Paterson*, 578 U.S. 266 (2016), on grounds that Patterson's mayor erroneously perceived that Heffernan had already engaged in protected activity, not that he was about to engage in such activity in the future. DOL Br. 53. The ACA, however, explicitly prohibits retaliation against both past and future participation. That is what "about to" means.

TCWP argues that the ACA's "about to" causes require an "instituted" proceeding. TCWP Br. 22, 25. If "about to" actually meant "already did," then "about to" would be surplusage. Instead, it means that it is unlawful for TCWP to fire its employees for litigation they will conduct in the future. TCWP alleges that the Fourth Circuit rejected a claim of protection under "identical FLSA language" in *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 364 (4th Cir. 2000).[2] The statute at issue in *Ball* was 29 U.S.C. § 215(a)(3). After the Supreme Court's 2011 decision in *Kasten*, the Fourth Circuit reached a different conclusion in *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 432 (4th Cir. 2012) ("we find the Supreme Court's reasoning in [*Kasten*] to be persuasive here.").

[2] At the bottom of p. 28, TCWP's brief calls the FLSA's language "distinct[.]"

TCWP also relies on *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 793-94 (7th Cir. 2020), to claim that a plaintiff must establish protected activity to have an anticipatory retaliation claim. TCWP Br. at 26. The Court rejected Marshall's claim on the merits of his termination for engaging in sexual harassment, and not because of any such pre-condition to claims of anticipatory retaliation. The Court stated, "[w]e have recognized the viability of claims based on theories of anticipatory retaliation." 973 F.3d at 793.

DOL asserts that TCWP "worried about a vague risk of litigation" but it provides no citation to the record for this claim. DOL Br. 53. There was nothing vague about Spatafore's eviction, Iwaseczko's termination or TCWP's refusal to rehire Spatafore. Those are concrete injuries arising from actual retaliation at issue in this case.

### C. Petitioners are protected under 29 U.S.C. § 218c(a)(3) and (4) for participation in proceedings.

The DOL Brief provides helpful history on court interpretations and legislative changes affecting the scope of participation clauses in whistleblower cases. DOL Br. 40-41. It correctly notes that in *Kansas Gas & Electric Co. v. Brock*, 780 F.2d 1505, 1510-13 (10th Cir. 1985), this Court disagreed with the Fifth Circuit's narrow holding in *Brown & Root, Inc. v. Donovan*, 747 F.2d 1029, 1034-36 (5th Cir. 1984) (that the ERA's participation clause did not protect internal

disclosures). It also recognizes the Third Circuit's broad interpretation of the CWA in *Passaic Valley Sewerage Comm. v. Department of Labor*, 992 F.2d 474, 479 (3d Cir. 1993).[3] The ARB considered how Congress amended the ERA to reject the Fifth Circuit's holding in *Brown & Root* and then concluded that it should now adopt the same narrow stance that Congress decided to reject! See also FO 20-22.

This Court should uphold the intention Congress has repeatedly expressed that whistleblower laws are to be broadly construed to further the remedial purpose of encouraging employees to come forward with their concerns. See S. Rep. 107-146, p. 19 (May 6, 2002) (citing *Passaic* with approval for use in interpreting SOX; cited in Petitioner's Br. at 40); S. Rep. 112-155, p. 4 (April 19, 2012) ("The Committee intends that disclosures be encouraged. The OSC, the Board and the courts should not erect barriers to disclosures which will limit the necessary flow of information from employees who have knowledge[.]"). TCWP's Brief at 26 errs in arguing that Passaic should be limited to CWA cases.

In *Stone & Webster Engineering Corp. v. Herman*, 115 F.3d 1568, 1576 (11th Cir. 1997), the Eleventh Circuit examined the legislative purpose of the statute that overruled *Brown & Root*:

---

3 In fact, the Department of Labor's decision affirmed in *Passaic* relied on an earlier mine safety case. *Guttman v. Passaic Valley Sewerage Comm.*, 85-WPC-2, D&O of SOL, pp. 10-13 (March 13, 1992), relying on *Munsey v. Federal Mine Safety and Health Review Comm'n*, 595 F.2d 735, 742-743 (D.C. Cir. 1978) (protecting safety report to foreman). See also, *Phillips v. Interior Board of Mine Operations Appeals*, 500 F.2d 772, 779-81 (1974).

> The legislative history of the 1992 Energy Policy Act, too, makes clear that Congress intended the amendments to codify what it thought the law to be already. Congress sought "to explicitly provide whistleblower protection for nuclear industry employees [who] (1) notify their employer of an alleged violation rather than a federal regulator." H.R. No. 102-474 (VIII), at 78, reprinted in 1992 U.S.C.C.A.N. 1953, 2282, 2296 .... In other words, Congress thought the statutory language broad enough already, but recognized that it required explication.

Thus, DOL is just wrong when it argues that "the ERA's structure of differentiating between disclosures (including internal disclosures) and proceedings" means that "the ARB is correct to interpret 'proceedings" under the ACA in a different and more restrictive manner than in *Passaic*." DOL Br. 41-42. Congress meant to enshrine the *Passaic* holding and reject the Fifth Circuit's contrary holding. Congress was not concerned about the new language becoming surplusage to the legacy participation clauses, but it did find it necessary to add additional words to avoid precisely the narrow court holdings that went against its broad remedial purpose.

The ARB's FO (at 19) notes that the ACA's protection "is predicated upon other whistleblower statutes" such as the CPSIA and STAA. The STAA protects those who has "filed a complaint or beg[an] a proceeding related to a violation[.]" 49 U.S.C. § 31105(a)(1)(A)(i). The ARB has made clear that the phrase "relating to" "does not restrict protection to participation in STAA proceedings. Rather, protection extends to employees who have filed any complaint or instituted or

testified in any proceedings relating to a violation of a spectrum of safety criteria." *Moyer v. Yellow Freight System, Inc*., 89-STA-7 (Sec'y Sept. 27, 1990) (order denying motion to vacate and reopen).[4] The ACA's use of the phrase "concerning such violation" deserves an equally broad interpretation. 29 U.S.C. § 218c(a)(3). TCWP's contention that proceedings have to be those authorized under 29 U.S.C. § 218c(a)(2) is inconsistent with the text of (a)(4) and with this precedent. Ref. TCWP Br. at 20-21. DOL's Brief does not address *Kasten*, a case addressing FLSA – the very law into which Congress inserted the ACA's whistleblower protection. See Petitioner's Brief 46.

TWCP relies on *Edwards v. A.H. Cornell & Son,* 610 F.3d 217, 224–25 (3d Cir. 2010) to argue that a "proceeding" has to seek "redress from a tribunal or agency[.]" TCWP Br. 28. *Edwards* considers ERISA's protection of internal complaints under 29 U.S.C. § 1140, an issue for which there is a circuit split. See, *Sexton v. Panel Processing, Inc*., 754 F.3d 332, 340-41 (6th Cir. 2014). TWCP further relies on *Edwards* asserting that the FLSA's protection for those who "filed any complaint" carries "no formality requirement[.]" TCWP Br. 28-29, citing 610 F.3d at 225. Spatafore's complaints to the Department of Insurance, the Wyoming Retirement System, the County HR, the state Department of Labor, the County Commissioners, and to the employer (a government agency itself), were all

4 Quoted at: https://www.dol.gov/agencies/oalj/PUBLIC/WHISTLEBLOWER/REFERENCES/REFERENCE_WORKS/SDIG5A

requests to agencies seeking redress. Spatafore was inquiring about employment benefits that are within the scope of protection of ACA § 1557. They were therefore "concerning" ACA violations and should be protected.

### D. Iwaseczko is protected under 29 U.S.C. § 218c(a)(4) for participation in Spatafore's protected activities.

Iwaseczko's disclosures of emails to Spatafore assisted him in his investigation of whether TCWP violated ACA § 1557. They assist Spatafore to this day in this very proceeding. There can be no doubt that they are evidence in this record. DE 21-3 at 132-33, 201, 216. Indeed, it was her intention to assist Spatafore in his investigation of the employer's compliance with the ACA. She testified at DE 21-1, 366:22-367:

> [W]hen he brought up eligibility for benefits, initially in my mind, you know, he was in a category, he was a seasonal employee and by practice we had never provided benefits to seasonal employees. So it didn't even occur to me that he would be eligible.
>
> And then once he provided more information to me, I realized that, that was something that needed to be looked into and so I started reviewing emails that I could sort of recall off the top of my head that related to seasonal employees and benefits. And so on October 7th, 2017, I searched through those emails and I forwarded the ones that pertain to those topics to my personal email account.

This is assistance to Spatafore in an anticipated proceeding under ACA Section 1557. The ACA specifically protects those who assist in potential future

proceedings. 29 U.S.C. § 218c(a)(4) ("assisted or participated, or is about to assist or participate, in such a proceeding"). Congress clearly wants to protect those who assist in proceedings that could be commenced in the future. That is what "about to" means. It was Iwaseczko's assistance that got her fired. Mateosky testified that her releasing information "to bolster a lawsuit" would be "a very egregious act." DE 21-1 at 62:23-63:8; DE 21-7 at 349, fn 57.

DOL's Brief argues that because there were no "proceedings" "all throughout 2017" then Iwaseczko was not protected when she provided the emails to Spatafore in October 2017. DOL Br. 50; see also TCWP Br. at 29-30. This argument fails because the law sets no temporal requirement for the proceedings. It specifically protects assistance for future proceedings. The Supreme Court rejected such formality in *NLRB v. Scrivener*, cited above. The Court held that an employee's statement to an agency investigator was protected "testimony" under the NLRA, 29 U.S.C. § 158(a)(1), explaining that "[w]hich employees receive statutory protection should not turn on the vagaries of the [Board's] selection process or on other events that have no relation to the need for protection." 405 U.S. at 123-24. The ACA's "about to testify" and "about to assist or participate" language, 29 U.S.C. § 218c(a)(3)–(4), is broader than the NLRA provision at issue in *Scrivener* and compels the same result: protection for the preparatory steps — attorney consultation, agency contacts, evidence-gathering — that necessarily

precede formal proceedings. Further, if Petitioners prevail on Spatafore's participation claim, then they must do so for Iwaseczko's as well.

TCWP argues that Iwaseczko failed to preserve this claim below. TCWP Br. at 29, ¶ 1, citing FO 36. As DOL correctly noted, the preservation issue was about "*Spatafore's* disclosures to Iwaseczko (not the other way around)." DOL Br. at 50, n. 8. Iwaseczko's claim of assisting Spatafore was preserved. Petitioners' Br. 47.

TCWP relies on *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 259 (4th Cir. 1998), to argue that for assistance to be protected, the proceeding has to exist before the assistance is given. *Laughlin* was a Title VII case and the Court there did not consider application of the ACA's "about to" clause. Further, unlike in *Laughlin*, Iwaseczko provided assistance in response to concerns Spatafore had raised to her. DE 21-1, 366:17-367:18.

TCWP claims that Mateosky did not know to whom Iwaseczko gave her emails. TCWP Br. at 32. TCWP's brief never mentions Mateosky's testimony that Iwaseczko releasing information "to bolster a lawsuit" would be "a very egregious act." DE 21-1 at 62:23-63:8; DE 21-7 at 349, fn 57. Nevertheless, employer knowledge is a causation issue and is immaterial to the scope of protection Petitioners are raising here.

TWCP claims that Iwaseczko should lose protection because she disclosed other employee's confidential personnel records in violation of TCWP policy.

TCWP Br. at 32-33, ¶ 5. TCWP fails to cite to a specific provision of its policy. As noted above, its confidentiality policy prohibits only disclosures "outside the District." TCWP Br. at 6. It further provides that "**Employees do not have a right to privacy with respect to any internet, email, or other use or data on District computers or other equipment**, …." DE 21-2, p. 19 (emphasis in original Policy Handbook); Respondent's Trial Brief (RTB), DE 21-7, p. 131, ¶ 55. If Iwaseczko's forwarding of the email is protected by law, then only a law passed by Congress can deprive her of that protection. *Dep't of Homeland Security v. MacLean*, 574 U.S. 383 (2015); Petitioners' Br. at 49-50.

In *Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tennessee*, 555 U.S. 271, 279 (2009), the Court protected a witness to sexual harassment without addressing whether the witness had a reasonable belief that the harassment violated the law.

## II. REMAND IS APPROPRIATE FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS COURT'S JUDGMENT.

TCWP argues that Petitioners have failed to establish that their assumed protected activities were a contributing factor in the adverse actions. TCWP Br. at 35-36. This is the causation issue for which Petitioners seek a remand. If this Court finds that the remarks quoted on pages 1 and 2 above constitute anticipatory retaliation, or that Iwaseczko's assistance to Spatafore's § 1557 investigation is

protected, or that Spatafore's complaints to various agencies, his speech to the County Commissioners or his November 9, 2017, email, are protected, then Petitioners will have a stronger claim before DOL on remand to show causation. These protected activities are inherently intertwined with the adverse actions making remand particularly appropriate. Accord, *Genberg v. Porter*, 882 F.3d 1249, 1259-60 (10th Cir. 2018) (the employer could not meet its clear-and-convincing burden where the protected activity preceded the termination by one day and the investigation leading to the firing was "inextricably intertwined" with the protected emails); *Murray v. UBS Sec., LLC*, 601 U.S. 23, 33–34, 45 (2024) (The contributing factor standard is "more lenient than most" and "[t]his Court cannot override Congress' policy choice by giving employers more protection than the statute provides.").

As noted in the Introduction above, DOL's self-serving assertions that it already considered all alleged protected activities are conclusory and fail to show that the direct evidence of the perceived "litigation risk" was not a contributing factor to the Intervenor's ejectment of Iwaseczko and Spatafore. Neither opposing brief addresses how *Knox* and *Chambers v. Dept. of Interior*, 515 F.3d 1362, 1371 (Fed. Cir. 2008), both call for remands when review finds additional grounds for protection. These issues should be addressed by the ARB on remand following this

Court's directions as to the protected activities for which causation should be considered.

## CONCLUSION

Marta Iwaseczko and Thomas Spatafore ask this Court to reverse the Board's Final Order and remand this matter to the Board for further proceedings consistent with the opinion of this Court. They also ask for their costs in this petition.

## STATEMENT REGARDING ORAL ARGUMENT

Federal whistleblower protections are complex and nuanced. There is little precedent specifically under the ACA, and the statutory context of the ACA's employee protection will be helpful in its interpretation.

The record in this particular case is large. Numerous incidents were cited and each contributes to the overall scenario of this case.

Oral argument could be particularly helpful for the Court's understanding of the law and its application to this record. Accordingly, Spatafore and Iwaseczko request oral argument.

Respectfully submitted,

/s/ Richard R. Renner

______________________________

Richard R. Renner
The Noble Law
700 Spring Forest Road, Suite 205
Raleigh, NC 27609
(919) 736-6381
rrenner@igc.org
rrenner@thenoblelaw.com
*Attorney for Petitioners*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

The Petitioners' brief complies with the word count limitation because it contains 5,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using the OpenOffice Writer and Times New Roman 14-point font.

Date: August 21 2026

Respectfully submitted by:

/s/ Richard R. Renner

Richard R. Renner
*Attorney for Petitioners*

## CERTIFICATE REGARDING REDACTIONS

This brief and its attachments do not contain any information required to be redacted by Fed. R. App. P. 25(a)(5) and 10th Cir. R. 25.5.

/s/ Richard R. Renner

Richard R. Renner

# ADDENDUM

Affordable Care Act (ACA), Section 1558, employee protection provision, 29 U.S.C. § 218c.

Affordable Care Act (ACA), Section 1557(a), non-discrimination, 42 U.S.C. § 18116(a)

## A. Affordable Care Act (ACA), Section 1558, employee protection provision, 29 U.S.C. § 218c

29 U.S. Code § 218c - Protections for employees

(a) Prohibition. No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has—

(1) received a credit under section 36B of title 26 or a subsidy under section 18071 of title 42;

(2) provided, caused to be provided, or is about to provide or cause to be provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of this title 1 (or an amendment made by this title);

(3) testified or is about to testify in a proceeding concerning such violation;

(4) assisted or participated, or is about to assist or participate, in such a proceeding; or

(5) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title 1 (or amendment), or any order, rule, regulation, standard, or ban under this title 1 (or amendment).

(b) Complaint procedure

(1) In general

An employee who believes that he or she has been discharged or otherwise discriminated against by any employer in violation of this section may seek relief

in accordance with the procedures, notifications, burdens of proof, remedies, and statutes of limitation set forth in section 2087(b) of title 15.

(2) No limitation on rights

Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement. The rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment.

## B. Affordable Care Act (ACA), Section 1557(a), 42 U.S.C. § 18116(a)

42 U.S. Code § 18116 - Nondiscrimination

(a) In general

Except as otherwise provided for in this title [1] (or an amendment made by this title),[1] an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title [1] (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.